# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BROTHERHOOD OF LOCOMOTIVE )
ENGINEERS AND TRAINMEN (GENERAL )
COMMITTEE OF ADJUSTMENT, )
WESTERN LINES), )
                                                                                            )
      Plaintiff, )
                                                                                            )    No. 17 CV 2130
     v. )
                                                                                            )    Judge Ronald A. Guzmán
UNION PACIFIC RAILROAD COMPANY, )
                                                                                            )
     Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons explained below, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

## **BACKGROUND**

Plaintiff, Brotherhood of Locomotive Engineers and Trainmen (General Committee of Adjustment, Western Lines) (the "Union") brought this suit under the Railway Labor Act (the "RLA"), 45 U.S.C. § 153 First (q), and the Fifth Amendment, seeking to set aside an arbitration award rendered by the National Railroad Adjustment Board (the "Board") in a dispute between defendant Union Pacific Railroad Company (the "Railroad") and a Union member and former Railroad employee, locomotive engineer J.J. Andrade. In its award, the Board concluded that the Railroad had failed to produce sufficient evidence at an investigatory hearing to sustain its charge that Andrade had engaged in immoral conduct on April 23, 2012, but the Board declined to order Andrade's reinstatement or compensation for time lost because shortly after the hearing,

Andrade had pleaded *nolo contendere* to, and was convicted of, a sex crime based on the same conduct. (ECF No. 1-1.)

The material facts are not in dispute. On May 4, 2012, the Railroad issued a "Notice of Investigation" to Andrade. In pertinent part, it stated as follows:

> Please report . . . on Friday, May 11, 2012, for investigation and hearing to develop the facts and determine your responsibility, if any, concerning the following alleged incident: Information received on April 24, 2012, revealed that while employed as an Engineer on the Colton Reserve board you allegedly conducted yourself in an immoral and illicit manner that is unbecoming an employee when you were arrested on Monday, April 23, 2012, and incarcerated in the Rancho Cucamonga, California, West Valley Detention Center jail for alleged felony charges of kidnapping, sexual assault, and raping a woman on April 23, 2012. In addition, you are charged with allegedly being unable to protect your employment while on your reserve board assignment since April 23, 2012, as a result of being incarcerated. These alleged actions indicate a possible violation of Rule 1.6, and Rule 1.15, as contained in the General Code of Operating Rules, effective April 7, 2010 . . . .

(ECF No. 13-1, Agreed Arbitration R. at 113 (emphasis omitted).)

The Railroad's Operating Rule 1.6 states that employees must not be "immoral," among other things, and that "[a]ny act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal." (*Id.* at 126.) Operating Rule 1.15 states that employees must report for duty at the designated time and place and that their continued failure to "protect their employment" is cause for dismissal. (*Id.* at 127.) In addition to these Railroad rules, Andrade's employment was also subject to collective bargaining agreements ("CBAs") that included the parties' "System Agreement - Discipline Rule" (the "Discipline Rule"), which outlines the procedures under which Union members can be disciplined. (*Id.* at 275-278.) Under the Discipline Rule, a Railroad employee who has received a notice of investigation is entitled to a "fair and impartial," "recorded and transcribed"

hearing (called an "investigation"), which is to be held no later than ten days after the date of the notice, unless postponed for good cause. (Discipline Rule ¶¶ 2, 5, 8.)

Andrade's original May 11, 2012 investigatory hearing was postponed multiple times over several months at his and the Union's request, to allow Andrade to tend to his criminal defense. In late October, Andrade requested that the Railroad hold the hearing, so it was held on October 29, 2012. At the hearing, the Railroad's representative introduced a copy of an April 24, 2012 news article from the *Desert Dispatch* in Barstow, California, which had appeared on the internet and in which it was reported that Andrade had been arrested and "accused of rape, oral copulation by force and kidnapping to commit rape." (R. at 63-64, 152.) The article stated that Andrade had approached the victim, offered to buy her cigarettes, "threatened and intimidated" her, forced her into his truck, and taken her to his home, where he "raped and sexually assaulted her." (*Id.* at 152.) The article further stated that after police interviewed Andrade and searched his residence, they "found evidence supporting the victim's allegations." (*Id.*) In addition, the Railroad introduced the online comments that had been posted in connection with the article (which included comments by those purporting to be coworkers or former coworkers). (*Id.* at 64, 153-62.)

The Railroad then submitted evidence that in relation to the April incident, Andrade had been charged with two felonies: rape by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury (Cal. Penal Code § 261(a)(2)) and oral copulation by the same means (Cal. Penal Code § 288a(c)(2)(A)). (R. at 65-66.) The Railroad also introduced evidence of Andrade's criminal history that it had recently discovered, including that in 2008, Andrade had been charged with willful harm to a child and contact with a minor with the intent to commit a sexual offense, and he had pleaded *nolo contendere* to the former. (*Id.* at 69-72.)

3

Andrade was examined at the hearing, and he made an oral statement. (*Id.* at 95-106.) He did not specifically deny any of the allegations concerning the April incident, but emphasized that the criminal charges against him were still pending and that he had not been found guilty of any felony. Andrade characterized the Railroad's evidence as "hearsay" and pointed out that the newspaper article was incorrect in that he had never been charged with kidnapping. In closing argument, Andrade's union representative argued that the Railroad had failed to offer any competent evidence to support its allegation that Andrade had violated any rules, and he repeatedly emphasized that Andrade had pleaded not guilty, had not been convicted of any criminal offense, and had not yet had his day in court. (*Id.* at 106-111.)

On November 6, 2012, the General Superintendent of the Railroad issued a notice in which he sustained the charge of immoral conduct and terminated Andrade's employment. (*Id.* at 128.) Two days later, on November 8, Andrade pleaded *nolo contendere* to the misdemeanor offense of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator (Cal. Penal Code § 261.5(b)), and the felony rape and oral-copulation charges were dismissed pursuant to the plea. (*Id.* at 22-24.) The state-court case record states that the "violation date" for the conviction is April 23, 2012. (*Id.* at 24.) The court minutes state: "Court accepts plea of nolo contendere and finds defendant guilty based on plea." (*Id.* at 22.) They further reflect that Andrade was sentenced to 23 days' time served in the San Bernardino County Jail with 36 months' probation and that he was ordered to "not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter nor disturb the peace of the victim" and to comply with all protective orders the victim had obtained. (*Id.* at 23.)

On January 2, 2013, the Union appealed Andrade's termination. In the appeal, the Union argued that Andrade was terminated based solely on "alleged charges" and further argued that "the charges were dismissed" in the case the Railroad "relied on to support [its] reason for dismissal." (*Id.* at 11 (emphasis omitted).) The appeal did not mention Andrade's plea to or conviction on the misdemeanor charge. The Railroad denied the appeal, stating among other things in its denial letter that it had learned that after the investigatory hearing, Andrade had pleaded *nolo contendere* to the offense of unlawful sexual intercourse with a minor. (*Id.* at 14-24.)

Subsequently, the Union filed an arbitration claim before the Board, seeking Andrade's immediate reinstatement, "compensation for all time lost," and the restoration of "annual vacation rights." (*Id.* at 265.) In its submission, the Union repeated its assertions that Andrade's termination was based solely on allegations and that the "charges were dismissed" in Andrade's criminal case. The Union's submission again neglected to mention Andrade's plea and conviction. In its response, the Railroad maintained that it had presented substantial evidence at the investigatory hearing that Andrade had engaged in "grossly immoral conduct." (*Id.* at 26.) The Railroad also took issue with the Union's description of the resolution of Andrade's state-court case, noting that the *case* had not been dismissed and in fact Andrade had entered a plea to a lesser charge. (*Id.* at 27-28.)

The Board issued its ruling on March 18, 2015. In its ruling, the Board discussed the procedural background of the dispute and reviewed the evidence the Railroad offered at the investigatory hearing, summarizing it as follows:

> The [Railroad] sustained the disciplinary charges based on: 1) the existence of the criminal charges filed against [Andrade]; 2) the newspaper article describing the incident; 3) previous immoral conduct by [Andrade] that took place in 2008; and

5

    4) comments made by co-workers on social media expressing their reluctance to work with [Andrade].

(*Id.* at 4.) The Board concurred with the Union that this evidence was insufficient to satisfy the Railroad's burden to prove that it was more likely than not that Andrade had engaged in immoral conduct on April 23, 2012, and explained that "[i]f it was, an employee could be summarily terminated for merely being arrested, charged, and defamed on social media, even where the employee is subsequently found completely innocent of the crime." (*Id.*) Accordingly, the Board sustained the Union's claim.

The Board then proceeded, however, to discuss the "unique facts" of the case, noting that only ten days after the investigatory hearing and two days after the termination of his employment, Andrade "pled guilty" to the crime of having sexual intercourse with a minor. (*Id.*) In the Board's view, that crime was "clearly and undisputedly immoral conduct for which the [Railroad] had the right to terminate" Andrade's employment. (*Id.*) The Union did not contest that conclusion, but objected to the Board's consideration of the disposition of the criminal case on the ground that it constituted "post-Hearing evidence." (*Id.*) But the Board rejected this gambit, stating as follows:

> The evidence in question does not involve, for example, after-acquired testimony from an eye witness, an updated newspaper article or additional screen shots from social media revealing co-workers' feelings toward [Andrade]. To attempt to introduce such evidence into the proceedings after the Investigation would be unfair, prejudicial and a violation of Agreement due process. To the contrary, the document in question here is a public court document certifying that [Andrade] pled guilty to engaging in immoral conduct on the date in question. Without question, the Board can take arbitral notice of this public document.
>
> Indeed, to accept the [Union's] argument would permit an employee who is arrested and charged with crimes to insist that the [Railroad] investigate the criminal charges as originally filed prior to their resolution, wait for the discipline to issue, and then later plead guilty to a different charge and appeal the discipline because the [Railroad] did not prove the original charges. Whereas here

> [Andrade] insisted that the [Railroad] conduct his Investigation prior to his criminal charges being resolved, he could not later plead guilty to a different charge based on the same incident and expect that such plea would not impact his employment with the [Railroad].

(*Id.* at 4-5.) The Board thus concluded that while the Railroad failed to sustain its charge, the Board would deny the Union's request for Andrade's reinstatement and compensation for time lost, "in light of [Andrade's] admission on November 8, 2012 to the crime of engaging in sexual relations with a minor on April 23, 2012." (*Id.* at 5.)

This action ensued.[1]

## LEGAL STANDARDS

The RLA provides for judicial review of the Board's award. 45 U.S.C. § 153 First (q). Judicial review of the Board's decisions is "among the narrowest known to the law." *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 563 (1987); *see also Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R. ("Locomotive Eng'rs")*, 522 F.3d 746, 757 (7th Cir. 2008) ("[I]t is worth emphasizing that our review of NRAB awards remains exceptionally narrow."). Under the RLA, federal courts may review the Board's decision only when the Board (1) failed to comply with the RLA's requirements; (2) failed to conform or confine itself to matters within the scope of its jurisdiction; (3) engaged in fraud or corruption; or

---

[1] Not included in the Court's factual recitation are the matters addressed in the Railroad's statements in paragraphs 45 through 58 of its Local Rule 56.1 submission. These statements relate to grievances and proceedings before the Board that involved discipline of other Union members. The Union moves to strike the statements on the ground that they are irrelevant (and, as to some, on the ground that they are conclusions of law and not fact). The Court will not strike the statements on either ground in light of the fact that the Court of Appeals has found it useful in some cases to study the Board's practices and prior arbitration awards. *See, e.g.*, *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R.*, 522 F.3d 746, 753-55 (7th Cir. 2008). Here, however, it was not necessary or helpful to do so, so the Court has disregarded paragraphs 45 through 58.

7

(4) denied a party due process. *Locomotive Eng'rs*, 522 F.3d at 750. To prove that the decision exceeded the Board's jurisdiction, a party must show that the decision was "without foundation in reason or fact" or "wholly baseless and without reason." *Bates v. Baltimore & Ohio R.R.*, 9 F.3d 29, 32 (7th Cir. 1993). "[T]he question before a federal court 'is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.'" *Locomotive Eng'rs*, 522 F.3d at 757 (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir. 1987)). "As the Supreme Court has 'emphasized and re-emphasized,' this limited standard of review exists because 'Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board.'" *Am. Train Dispatchers Ass'n v. Norfolk & W. Ry.*, 937 F.2d 365, 366 (7th Cir. 1991) (quoting *Gunther v. San Diego & Ariz. E. Ry.*, 382 U.S. 257, 263 (1965)). Due process is satisfied in the arbitration context "so long as the arbitrator provided a fundamentally fair hearing, one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *Locomotive Eng'rs*, 522 F.3d at 751.

## ANALYSIS

The Union argues that the Board failed to comply with the RLA's requirements, failed to confine itself to its lawful jurisdiction, and denied Andrade due process by declining to reinstate him or compensate him for time lost despite finding that the Railroad had presented insufficient evidence at the investigatory hearing to sustain its charge that Andrade had engaged in immoral conduct. In the Union's view, the Board "worked its own industrial justice" and exceeded its lawful authority by "effectively disciplin[ing] Andrade itself, on the basis of post-termination conduct that was not part of the record before it." (ECF No. 16, Pl.'s Mem. Supp. Mot. at 3.)

The Union mischaracterizes the basis for the Board's decision as "post-termination conduct." The conduct at issue throughout the proceeding occurred in April 2012; the only post-termination event was Andrade's *nolo contendere* plea and resulting conviction for the underlying conduct. The Union describes the plea as "new evidence" that came "after the fact," and argues that the Board was limited to considering "the facts that were prepared by the parties in the course of what is known in industry parlance as the 'on-property' hearing and conference." (*Id.* at 4-5.) The Union cites 45 U.S.C. § 153 First (i), as well as 29 C.F.R. §§ 301.5, 301.6, and 301.7, in support of its contention that by considering the plea, the Board's decision was unlawful.

The statute and regulations cited by the Union do not support its contention that the Board was limited to considering only the evidence that was presented at the investigatory hearing. 45 U.S.C. § 153 First (i) merely provides generally that a dispute "may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." And 29 C.F.R. § 301.5, the regulation that governs the form of submissions to the Board, states simply that "all data submitted in support of [the] carrier's position must affirmatively show the same to have been presented to the employees or duly authorized representative thereof and made a part of the particular question in dispute." 29 C.F.R. § 301.5(e).[2] The Union glosses over the fact that the Railroad become aware of Andrade's *nolo contendere* plea before it denied his appeal of his

---

[2]Similarly, the other cited regulations provide generally that the parties should prepare their submissions to the Board such that the "pertinent and related facts and all supporting data bearing upon the dispute will be fully set forth," 29 C.F.R. § 301.6, and that the parties must include in their original written submission to the Board "all known relevant, argumentative facts and documentary evidence," 29 C.F.R. § 301.7.

9

termination, as well as the fact that the Railroad included the plea as a basis for its denial of the appeal. The plea was therefore part of the pre-arbitral record that was developed during the "on-property" process, which the Union had the opportunity to address pre-arbitration, in the context of Andrade's appeal to the Railroad. Andrade, obviously, was well aware of the plea, and it cannot reasonably be characterized as "new evidence" that was developed or introduced solely during the arbitration stage. *See Locomotive Eng'rs*, 522 F.3d at 748 ("The procedure for dispute resolution is set forth in the parties' collective bargaining agreement and begins with investigations, hearings, *and appeals* that take place on the railroad property and are generally referred to as 'on-property' proceedings.") (emphasis added). In any event, the Board's decisions to admit or exclude evidence are left entirely to its discretion. *Id.* at 750.

The Union also asserts that "the correctness of a discharge 'must stand or fall upon the reason given at the time of discharge.'" (Pl.'s Mem. Supp. Mot. at 7 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.8 (1987)).) The Union omits the full quotation from *Misco*, which reads: "Labor arbitrators have stated that the correctness of a discharge 'must stand or fall upon the reason given at the time of discharge,' and arbitrators often, *but not always*, confine their considerations to the facts known to the employer at the time of the discharge." 484 U.S. at 40 n.8 (citation omitted and emphasis added). The Union goes on to disclaim any argument "that an arbitrator can *never* consider post-termination conduct for *any* reason," and it concedes that "arbitrators do look at post-termination conduct in assessing the remedy." (Pl.'s Mem. Supp. Mot. at 7.) It contends, however, that the Board acted outside its authority here because it declined to provide Andrade any remedy. This is not a principled argument, and the Union cites no authority that supports it or its conclusory argument that the Board violated Andrade's right to due process.

Again, the Court's concern is not whether the Board's decision was wrong on the law or facts[3] but is limited to whether the Board strayed from interpreting and applying the governing agreements. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PPG Indus., Inc.*, 751 F.3d 580, 584 (7th Cir. 2014). In contrast to the decisions cited by the Union in which arbitrators ignored unambiguous CBA language, here the Union fails to point to any provision of the governing CBAs or Disciplinary Rule that limited the evidence the Board could consider, limited its discretion in fashioning a remedy, or required any particular remedy in the event of a finding that the Railroad failed to produce substantial evidence at the investigatory hearing to sustain its charge. In fact, the Union does not rely on any contractual provision whatsoever.

While "[a]rbitrators fail to interpret an agreement when they ignore the text of the agreement and instead rely on their own notions of justice," the law "does not . . . ban arbitrators from considering the interests at stake and relevant policy goals in coming to their decisions." *Bhd. of Locomotive Eng'rs & Trainmen, Gen. Comm. of Adjustment v. Union Pac. R.R.*, 719 F.3d 801, 803 (7th Cir. 2013). The Court agrees with the Railroad that the Board essentially concluded that allowing Andrade to force an investigatory hearing immediately prior to the

---

[3]The Court therefore rejects the Union's argument that the Board made a factual mistake regarding the nature of a *nolo contendere* plea when it stated that Andrade "pled guilty" to a sex crime. Moreover, this argument (as well as the Union's suggestion that statutory rape would have been impossible given Andrade's age) is unavailing because it was neither raised in the Union's opening brief nor in arbitration. *See United States v. Kennedy*, 726 F.3d 968, 974 n.3 (7th Cir. 2013) (parties waive arguments that they raise for the first time in a reply brief); *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 945 (7th Cir. 2013) (parties' failure to pose an available argument to the arbitrator waives the argument in collateral proceedings to enforce or vacate the arbitration award).

resolution of his criminal case "as a means to avoid termination for conduct for which he would be convicted of two days later" would be inconsistent with the intent of the Discipline Rule. (ECF No. 20, Def.'s Combined Mem. at 13.)  The Board's analysis indicates that it engaged in a rational interpretation of the governing agreements and considered the interests at stake rather than applying its own notions of justice.  It did not exceed the scope of its jurisdiction or its authority by overruling the Union's objection to its consideration of the outcome of Andrade's state-court criminal case or by declining to award Andrade his requested relief.  Furthermore, the Union and Andrade were not prejudiced.  They were not denied the opportunity to address the plea before the Board, but simply chose not to do so.  Accordingly, the Court finds no basis to overturn the Board's decision.

## CONCLUSION

Defendant's motion for summary judgment [17] is granted.  Plaintiff's motion for summary judgment [14] is denied.  Judgment on the arbitration award will be entered in favor of defendant.  Civil case terminated.


**DATE**:  January 9, 2018

_____
      **Ronald A. Guzmán**
      **United States District Judge**